IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____x

**ELIZABETH MOLINA,**

      **Plaintiff,**

      **v.**                                            **Civil No. 17-cv-7631**

**kaléo, INC.,**

      **Defendant.**

_____x


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS, TO STAY
IN FAVOR OF ARBITRATION, OR TO TRANSFER,**


                                       KAUFMAN & CANOLES, P.C.
                                       John M. Bredehoft, Esq.
                                       *Attorneys for Defendant*
                                       150 W. Main Street, Suite 2100
                                       Norfolk, VA 23510-1665
                                       Telephone: (757) 624.3225
                                       Facsimile: (888) 360.9092
                                       jmbredehoft@kaufcan.com

                                       KAUFMAN BORGEEST & RYAN LLP
                                       Joan M. Gilbride
                                       *Attorneys for Defendant*
                                       120 Broadway, 14th Floor
                                       New York, New York 10271
                                       Telephone: (212) 980-9600
                                       Facsimile: (212) 980-9291
                                       jgilbride@kbrlaw.com

1

5021639

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

SUMMARY ................................................................................................................ 1

    I.      PLAINTIFF'S CLAIMS SHOULD BE IN ARBITRATION IN VIRGINIA ................ 4

    II.     THE EXCLUSIVE VENUE PROVISION SHOULD BE ENFORCED ....................... 9

    III.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL

    JURISDICTION ...................................................................................... 14

        A.   This Court Lacks General Personal Jurisdiction Over kaléo ........................................ 14

        B.   This Court Does Not Have Specific Jurisdiction Over kaléo ........................................ 15

    IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER THE NEW

    YORK CITY HUMAN RIGHTS LAWS ................................................................. 17

CONCLUSION .......................................................................................................... 19

i

5021639

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Marine Construction Co. v. USDC Western District of Texas*,
   134 S.Ct. 568 (2013 ......................................................................... 10, 11, 12, 13

*Bristol-Meyers Squibb Co. v. Superior Court*,
   137 S.Ct. 1773 (2017) ............................................................................ 10, 16, 17

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619, 627 (2d Cir. 2016) ....................................................................... 10

*Burger King Corp. v. Rudzewicz* ,
   471 U.S. 462, 472 (1985)) ................................................................................... 15

*Bynum v. Maplebear, Inc.*,
   160 F. Supp. 3d 527 (E.D.N.Y. 2016) ................................................................. 6

*Daimler A.G. v. Bauman*,
   134 S.Ct. 746, 761 (2014) ............................................................................ 10, 15

*Duffy v. Drake Beam Morin*,
   1998 U.S. Dist. LEXIS 7215, at *11 (S.D.N.Y. May 19, 1998)). ........................ 18

*Forbes v. SeaWorld Parks & Ent.*,
   2017 WL 2437348, at *5 (E.D. Va. June 2, 2017) ............................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915, 924 (2011) .................................................................................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408, 414 n.8 (1984) ............................................................................. 15

*Horn v. Kirey*,
   ___ F. Supp. 3d ___, 2017 WL 6453330 (E.D.N.Y. Dec. 14, 2017) ................... 11

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163, 169 (2d Cir. 2004) ......................................................................... 6

*Katz v. Cellco Partnership*,
   749 F.3d 341, 347 (2d Cir. 2015) ......................................................................... 9

*Lee v. Fairfax Cty Sch. Bd.*,
   621 F. App'x 761, 763 (4th Cir. Aug. 18, 2015) ................................................ 7

5021639

*Maplebear, Inc., supra,*
    160 F. Supp. 3d at 533 ................................................................................. 9

*Martinez v. Bloomberg LP,*
    740 F.3d 211, 216 (2d Cir. 2014)................................................................ 11

*McMahan Sec. Co. v. Forum Capital Mkts.,*
    35 F.3d 82, 85-86 (2d Cir. 1994). ................................................................ 9

*Moise v. Family Dollar Stores of New York, Inc.,*
    2017 Wage & Hour Cas.2d (BNA) 184,310 (S.D.N.Y. June 1, 2017) ....................... 7

*New Moon Shipping Co. v. MAN B&W Diesel AG,*
    121 F.3d 24, 29 (2d Cir. 1997)..................................................................... 11

*Parisi v. Goldman Sachs & Co.,*
    710  F.3d  483, 487 (2d Cir. 2013)................................................................. 8

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235, 241 n.6 (1981)) ..................................................................... 13

*Plazza v. Airbnb, Inc.,*
    2018 WL 583122, at *13 (S.D.N.Y. Jan. 26, 2018).......................................... 7

*Ragone v. Atlantic Video,*
    595 F.3d 115, 120 (2d Cir. 2010).................................................................. 8

*Rodriguez-Depena v. Parts Authority, Inc.,*
    877 F.3d 122, No. 16-3396 (2d Cir. Dec. 12, 2017) ........................................ 8

*Sae Han Sheet Co. v. Eastman Chemical Corp.,*
    2017 WL 4769394 (S.D.N.Y. Oct. 19, 2017) ................................................. 10

*Santos v. Costco Wholesale, Inc.,*
    271 F. Supp. 2d 565, 571 (S.D.N.Y. 2003)................................................... 18

*Savarese v. J.P. Morgan Chase,*
    2016 WL 7167968 (E.D.N.Y.) ...................................................................... 8

*SPV OSUS, Ltd. v. UBS AG,*
    882 F.3d 333, 344 (2d Cir. 2018)................................................................ 17

*Stewart Organization, Inc. v. Ricoh Corp.,*
    487 U.S. 22, 30–31 (1988)) ......................................................................... 12

iii

*Sudul v. Computer Outsourcing Servs.*,
   917 F. Supp. 1033, 1047 (S.D.N.Y. 1996) ............................................................................. 13

*Zhu v. Hakkasan NYC LLC*,
   2017 Fair Empl. Prac. Case. (BNA) 424,088 (S.D.N.Y. Nov. 28, 2017) ............................. 8, 12

**Statutes**
Federal Arbitration Act, 9 U.S.C. § 3 .......................................................................................... 1
28 U.S.C. § 1391(a)(1) (2) ......................................................................................................... 11
28 U.S.C. § 1404(a) ............................................................................................................... 1, 10
42 U.S.C. § 2000e-5(f), ............................................................................................................. 11
ADA, ADEA ................................................................................................................................ 9
Title VII ............................................................................................................................. passim

**Rules**
New York City Administrative Code .................................................................................... 17, 18
New York City Human Rights Law (NYCHRL) .............................................................. 4, 8, 17
New York City law ...................................................................................................................... 2
NYCHRL ................................................................................................................................... 18
Rule 12(b)(3) .............................................................................................................. 1, 3, 14, 17
Rule 12(b)(6) ...................................................................................................................... 1, 17

5021639

Defendant kaléo, Inc., has moved this Court for an Order (1) dismissing this action for lack of personal jurisdiction pursuant to Rule 12(b)(3); or, alternatively, (2) pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, staying this action in favor of binding arbitration in the Commonwealth of Virginia, as required by plaintiff Elizabeth Molina's Employment Agreement with kaléo; (3) pursuant to 28 U.S.C. § 1404(a), transferring this matter to the United States District Court for the Eastern District of Virginia, Richmond Division, as required by the venue selection clauses in those documents, for a subsequent determination as to referral to arbitration; or, if the Court denies the other relief sought, (4) dismissing the claims under New York State law for failure to state a claim pursuant to Rule 12(b)(6).  The Court should grant the relief sought by kaléo.

## SUMMARY

Defendant kaléo is a manufacturer and distributor of pharmaceutical products.  Kaléo sells two main products.  AUVI-Q® is a unique product for the delivery of emergency epinephrine designed to prevent anaphylactic shock.  AUVI-Q competes directly with the familiar Epi-Pen, but is designed to eliminate many problems connected with Epi-Pen administration: AUVI-Q contains detailed voice instructions; intuitively avoids the common Epi-Pen experience of using the injector upside-down; automatically retracts the used needle, and delivers the medicine more quickly.  EXVIO® is the first and only intelligent, voice-guided emergency medication for acute opioid overdose in adults and children.  It is sold to first responders (including police), medical and care providers, and for home care use, and has been credited in saving over 5,000 lives since its introduction.

Plaintiff Ms. Molina was a medical sales specialist for kaléo.  She lives in the Bronx and her sales territory included Manhattan.  She was supervised by a variety of managers, most of

1

whom worked and resided outside of New York City.  Ultimately Ms. Molina reported to sales management in Richmond, Virginia.  Kaléo is incorporated under Virginia law and has its principal place of business (as well as its headquarters, business records, human resources, personnel, and general counsel functions) in the City of Richmond, Virginia.

Ms. Molina charges kaléo with discrimination against her primarily in the form of a failure to accommodate her religion because she is Jewish and observes *glatt* kosher dietary practices.  Ms. Molina alleges a violation of Title VII of the Federal Civil Rights Act, and of New York City law.[1]  The gravamen of her claim is that her manager did not treat her with respect, and that her requests for reasonable dietary and Sabbath-observance accommodations were refused.  Her Amended Complaint alleges specific incidents occurring at a National Sales Conference in Dallas, Texas (Amended Complaint ¶ 37) and at a subsequent company conference in South Carolina (*Id.* ¶ 95).  Her requests for accommodation as to clearing her schedule on the Sabbath and for special food were all handled – and were all granted – out of kaléo's headquarters in Richmond.  *See* Amended Complaint, Exhibits C and D (communications from kaléo counsel extensively quoting kaléo's affirmative responses to Ms. Molina's requests, such responses having been made by kaléo vice president for human resources, Elvira Cashel, in Richmond).[2]

---

[1]  Although Ms. Molina's Amended Complaint, which was amended to include claims under Title VII, was deemed filed more than 90 days after she received her right-to-sue letter from the EEOC, the "late" filing was the product of the parties' scheduling agreement.  Kaléo does not challenge the timeliness of Ms. Molina's Title VII claims on this ground and considers them to be timely filed.

[2]  Kaléo contests Ms. Molina's factual averments regarding her treatment, although recognizing that these averments may be taken as true for purposes of this motion.  Exhibits C and D to the Amended Complaint, which are incorporated into the allegations of the Amended Complaint, contain a detailed analysis of her claims, which may be of interest to the Court.  For example, although Ms. Molina pleads that she was starved at the Dallas conference by kaléo's failure to provide food she could eat (Amended Complaint at ¶ 59), she neglects to note that the kaléo General Counsel and the kaléo Vice President for Human Resources both made a special trip to Dallas during the conference to speak with Ms. Molina about her accommodation concerns – Ms. Molina had refused direction to come to Richmond to talk to them – and the General Counsel and Human Resources Vice President had lunch with Ms. Molina on the day she alleges she was fainting from hunger.

First, this case does not belong here.  Each of Ms. Molina's claims is subject to the valid arbitration and forum-selection provisions in her Employment and Loyalty Agreements. When Ms. Molina came to work for kaléo in November 2015, she signed an Employment Agreement (Exhibit A to the Amended Complaint) and a Loyalty Agreement (Exhibit B to the Amended Complaint).   Both contain a Virginia choice-of-law clause.   The Loyalty Agreement also contains a judicial choice of venue clause, in the event any non-arbitration proceeding is filed: any judicial proceeding must be filed, if at all, in the U.S. District Court for the Eastern District of Virginia, Richmond Division, or a corresponding local court.   Most importantly, the Employment Agreement contains a common "broad arbitration clause," requiring that any controversy arising out of Ms. Molina's employment must be referred to arbitration conducted in the Commonwealth of Virginia.   These straightforward provisions should be honored, and defendant's motion should be granted.   The matter should be stayed pending arbitration in Virginia or, alternatively, the case transferred to the Richmond Division of the Eastern District of Virginia for entry of a stay pending arbitration in Virginia.

To the extent this Court analyzes any part of the substance of the claims, the Court should dismiss Ms. Molina's Amended Complaint pursuant to Rule 12(b)(3) because this Court lacks personal jurisdiction over kaléo.   Since kaléo is not "at home" in New York, general personal jurisdiction to press Ms. Molina's claims is lacking, and the alleged composition of a lunch menu in Dallas by the alleged failure of a Richmond company to make Ms. Molina's dietary requirements sufficiently clear to the California-based food supervisor of its Chicago catering concern does not implicate specific jurisdiction here

---

5021639

Finally, the Amended Complaint fails to sufficiently allege a cause of action under the New York City Human Rights Law (NYCHRL) because none of the alleged acts of discrimination occurred within the City of New York.  The alleged acts took place, respectively, in Richmond, Dallas, and South Carolina.  Since no material part of the alleged acts of discrimination took place within the City of New York, Ms. Molina has failed to state a claim for relief under NYCHRL.  Moreover, Ms. Molina agreed that Virginia law, not New York City law, would govern her relationship with her employer.  Accordingly, these non-federal claims should be dismissed with prejudice under Rule 12(b)(6).

## I.  PLAINTIFF'S CLAIMS SHOULD BE IN ARBITRATION IN VIRGINIA

Ms. Molina signed her Employment Agreement with kaléo on November 18, 2015. Since the Employment Agreement is an exhibit to the Amended Complaint, it is incorporated into the Amended Complaint and the Court readily may consider it on this motion to stay.  The Employment Agreement contains a classic "broad arbitration" provision:

> Arbitration.    The parties agree that **any** controversy, claim or dispute **arising out of or relating to this agreement** or the loyalty agreement, or the breach thereof, or **arising out of or relating to the employment of the employee, or the termination thereof**, including any statutory or common law claims under federal, state, or **local** law, **including all laws prohibiting discrimination in the workplace**, shall be resolved by **arbitration** before a single arbitrator **in the Commonwealth of Virginia** in accordance with the employment arbitration rules and mediation procedures of the American Arbitration Association. . . . .

Employment Agreement, Exhibit A, at 6 ¶ 12 (emphasis added).  Although rendered here in plain typeface, the original of this provision is printed in **bold type** and ALL-CAPITALS in the Employment Agreement.

Ms. Molina signed her Loyalty Agreement with kaléo on November 19, 2015, Exhibit B to the Amended Complaint.  The Loyalty Agreement deals with subjects such as intellectual

4

property rights and confidentiality.   Paragraph 12 of the Employment Agreement contains a commonplace exception to the arbitration requirement, allowing kaléo to go to court "to seek injunctive relief to prevent employee from violating the obligations established in the Loyalty Agreement."   Exhibit A at 6.   Correlatively, the Loyalty Agreement contains the following choice-of-venue provision for any court action – not only to seek preliminary injunctive relief for a breach of the Loyalty Agreement, but for any matter related to Ms. Molina's employment:

> Subject to the requirement to arbitrate as set forth in any Employment Agreement between the Company and me, the parties hereto **irrevocably and unconditionally consent** to the **exclusive jurisdiction** of the following courts **in matters related to** this [Loyalty] Agreement or **my employment with the company** and agree not to commence any suit, action or proceeding relating thereto **except** in any of such courts: the state courts of the Commonwealth of Virginia or the courts of the United States of America located in the City of Richmond, Virginia.[3]

Loyalty Agreement, Exhibit B, at 6 ¶ 14(a)(i) (emphasis added).   In the original agreement, this provision also is printed in ALL CAPITALS.   Subparagraph 14(a)(ii) contains a waiver of a right to trial by jury in "any action or proceeding."   Both the Loyalty Agreement (Exhibit B, at 6 ¶ 14(a)) and the Employment Agreement (Exhibit A, at 5 ¶ 8) contain a choice of law clause specifying the use of the substantive law of the Commonwealth of Virginia.

Accordingly, based on these contracts, Ms. Molina agreed:

- "[A]ny controversy, claim or dispute" "arising out of or relating to [her] employment", "including all laws prohibiting discrimination", "shall be resolved by arbitration in the Commonwealth of Virginia."

---

[3]  The United States court located in the City of Richmond is the United States District Court for the Eastern District of Virginia, Richmond Division.

5021639

- Any court proceeding "related to . . . [her] employment with the Company" are within the "exclusive jurisdiction" of the Virginia state or the federal district court in Richmond, Virginia; and Ms. Molina "agree[s] not to commence any suit, action or proceeding relating thereto except in any of such courts" (a provision she violated by filing this action).

- All disputes between Ms. Molina and kaléo are governed by Virginia substantive law.

The issue of whether to stay this proceeding pending arbitration implicates four inquiries, each of which directs the parties towards arbitration in this case:

(1)     Have the parties agreed to arbitrate?

(2)     Do the asserted claims fall within the scope of the agreement?

(3)     Has Congress intended the claims to be non-arbitrable?

(4)     If only some claims are arbitrable, should a stay be entered of remaining claims?

*JLM Industries, Inc. v. Stolt-Nielsen SA,* 387 F.3d 163, 169 (2d Cir. 2004); *Bynum v. Maplebear, Inc.,* 160 F. Supp. 3d 527, 534 (E.D.N.Y. 2016) (Weinstein, S.J.), *appeal dismissed,* No. 1603348 (2d Cir. July 13, 2016).

All of these factors point towards arbitration.

First, the documents showing the parties' agreement to arbitrate are appended to and were filed as part of Plaintiff's Amended Complaint.  Those contracts emphasized the relevant provisions by extra-ordinary typeface and used plain language.  The Employment Agreement contains Ms. Molina's representation that she "has reviewed the contents of this Agreement and fully understands its terms;" that she "is fully aware of [her] right to seek independent advice and the risks of not seeking such independent advice," and that she "has been advised of the

6

5021639

importance of seeking independent counsel." (Exhibit A at 6 ¶ 16.)  The Loyalty Agreement contains a corresponding provision (Exhibit B at 8 ¶ 15).  Ms. Molina is a sophisticated and experienced business professional.

The parties' agreement to arbitrate is valid and enforceable. Although Ms. Molina was, for purposes of this motion, required to sign the arbitration agreement as a condition of her employment, nothing on the face of the agreement or the surrounding circumstances renders it "unconscionable." In either New York or Virginia, an employee who retains the option to turn down the offer of employment is foreclosed from arguing unconscionability. *See Forbes v. SeaWorld Parks & Ent.*, 2017 WL 2437348, at *5 (E.D. Va. June 2, 2017) ("[C]ourts have found that when plaintiffs maintain an option to refuse to sign the form and to work elsewhere instead… the plaintiffs faced a contract that was not unconscionable."); *Plazza v. Airbnb, Inc.*, 2018 WL 583122, at *13 (S.D.N.Y. Jan. 26, 2018) (no unconscionability where plaintiff had the option of "simply foregoing the activity").  Ms. Molina cannot avoid the arbitration agreement here by arguing it is unconscionable.

The agreement also cannot be avoided by an inchoate claim of duress because, as the Fourth Circuit has held, in Virginia "the application of economic pressure by threatening to enforce a legal right is not a wrongful act, [and] it cannot constitute duress." *Lee v. Fairfax Cty Sch. Bd.*, 621 F. App'x 761, 763 (4th Cir. Aug. 18, 2015).  Kaléo was well within its rights to require that Ms. Molina sign the arbitration agreement as a condition of her employment and Ms. Molina cannot now claim that the agreement is void because she felt economically pressured to accept kaléo's offer of employment.  *See Moise v. Family Dollar Stores of New York, Inc.*, 2017 Wage & Hour Cas.2d (BNA) 184,310 (S.D.N.Y. June 1, 2017) (Abrams, J.) (showing of economic duress requires "(1) threats of an unlawful act by one party that (2) compel

7

performance by the other party of an act that it had a legal right to abstain from performing"); *see also Zhu v. Hakkasan NYC, LLC*, 2017 Fair Empl. Prac. Cas. (BNA) 424,088 (S.D.N.Y. Nov. 28, 2017) (plaintiff did not read English, was told to sign agreement immediately without ability to review agreement; agreement is enforceable).

Second, the "broad" arbitration clause here covers the disputes outlined in the Amended Complaint, since it expressly applies to "any controversy, claim or dispute arising out of or relating to this agreement or the loyalty agreement, or the breach thereof, or arising out of or relating to the employment of the employee, or the termination thereof, including any statutory or common law claims under federal, state, or local law, including all laws prohibiting discrimination in the workplace." (Exhibit A at ¶ 12.)

Third, it is plain that discrimination claims of this type are arbitrable, and commonly are arbitrated.   "[A]s a general matter, '[c]ourts have consistently found that such claims [discrimination claims under Title VII of the Civil Rights Act] can be subject to mandatory arbitration.'"  *Parisi v. Goldman Sachs & Co.,* 710  F.3d  483, 487 (2d Cir. 2013) (reversing district court decision to deny arbitration under New York City Human Rights Law and Title VII), quoting *Ragone v. Atlantic Video,* 595 F.3d 115, 120 (2d Cir. 2010) (affirming decision to compel arbitration of claims under New York City Human Rights Law and Title VII). "Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the 'use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." *Parisi,* 710 F.3d at 487.  *See Rodriguez-Depena v. Parts Authority, Inc.,* 877 F.3d 122, No. 16-3396 (2d Cir. Dec. 12, 2017) (affirming order compelling arbitration of wage payment claim).  *See also Savarese v. J.P. Morgan Chase,* 2016 WL 7167968 (E.D.N.Y.)

5021639

(Locke, U.S.M.J.), *report and recommendation adopted in full,* 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016) (Bianco, J.) (holding that similarly worded clause encompasses employment discrimination claims under ADA, ADEA, and Title VII, and that such claims are arbitrable as "[c]ourts have consistently found that claims under Title VII . . . are arbitrable").

The fourth inquiry is not material in this case: all of the claims arise out of or relate to Ms. Molina's employment and all are arbitrable.

A stay pending arbitration in Virginia is appropriate.  (This is so whether or not the Court also transfers this matter to the Eastern District of Virginia.)  "Under the [Federal Arbitration Act], a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.  The FAA leaves no discretion with the district court in the matter." *McMahan Sec. Co. v. Forum Capital Mkts.,* 35 F.3d 82, 85-86 (2d Cir. 1994).  "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Maplebear, Inc., supra,* 160 F. Supp. 3d at 533 (emphasis in original).  *See Katz v. Cellco Partnership,* 749 F.3d 341, 347 (2d Cir. 2015) (holding that appropriate remedy upon referral to arbitration is stay rather than dismissal).

## II.      THE EXCLUSIVE VENUE PROVISION SHOULD BE ENFORCED

Under Paragraph 14(a)(i) of the Loyalty Agreement, Ms. Molina "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction of [state or federal courts in Richmond, Virginia] in matters related to this Agreement or my employment with the company."  This exclusive venue provision should be enforced.

9

5021639

In bringing this motion to transfer pursuant to 28 U.S.C. § 1404(a), kaléo does not concede the operative factual allegations that venue is proper in this district under Section 1391[4]. However, kaléo will concede for purposes of this argument only that venue may lie in this district, because the analysis under Section 1404(a) is more clear and less fact-bound than any analysis under Section 1406 (governing transfer of cases filed in "wrong" district).

Given the existence of the exclusive venue provision, the proper analysis of the motion to transfer this case to the Richmond Division of the Eastern District of Virginia is provided by *Atlantic Marine Construction Co. v. USDC Western District of Texas,* 134 S.Ct. 568 (2013). As the Supreme Court counseled there, "[w]hen a defendant files such a motion . . . a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." 134 S.Ct. at 575.

In considering a motion to transfer venue to a district specified by a forum selection clause, the Court held:

- "[T]he plaintiff's choice of forum merits no weight." *Id.* at 581.

- The Court "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582.

---

[4]  In particular, given the locus of most of the company management outside of New York, the processing and implementation of Ms. Molina's requests for accommodation outside of New York, the specific allegations relating to incidents in Texas, and the specific allegations relating to incidents in South Carolina, kaléo does not concede that "a substantial part of events giving rise to these claims" occurred in this District. However, for purposes of this argument, we will assume this conclusory factual allegation to be correct. It is for this same reason that a serious question exists as to the ability of this Court to exercise jurisdiction over kaléo; specific jurisdiction predicated merely on Ms. Molina's residence and work in the district would not seem sufficient given her allegations, and kaléo is not subject to general personal jurisdiction because it is not "at home" in New York under *Bristol-Meyers Squibb Co. v. Superior Court,* 137 S.Ct. 1773 (2017) and *Daimler A.G. v. Bauman,* 134 S.Ct. 746, 761 (2014). *See Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 627 (2d Cir. 2016); *Sae Han Sheet Co. v. Eastman Chemical Corp.,* 2017 WL 4769394 (S.D.N.Y. Oct. 19, 2017); *see also* Section I, *supra*.

- When "a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. . . ." *Id.*

*See, e.g., Horn v. Kirey*, ___ F. Supp. 3d ___, 2017 WL 6453330 (E.D.N.Y. Dec. 14, 2017) (enforcing state court forum selection clause under *Atlantic Marine*).

"If the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Martinez v. Bloomberg LP,* 740 F.3d 211, 216 (2d Cir. 2014).  The clause is due "substantial deference."  *New Moon Shipping Co. v. MAN B&W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997). It should be enforced in this case by a transfer to the Eastern District of Virginia, either before or subsequent to the entry of a stay pending arbitration.

Where a valid choice-of-venue provision exists, and the choice is between two federal courts, each of which could be a proper venue, the venue selection clause may be enforced under Section 1404(a). Section 1406 applies only where venue does ***not*** lie in the transferor court.  For purposes of this argument only, kaléo concedes that venue may lie in this Court based on the allegation in the Amended Complaint that a substantial part of the events or omissions giving rise to the claim occurred here, which is itself belied by the specific allegations in the Amended Complaint.  28 U.S.C. § 1391(a)(2).  This action could have been brought in the Eastern District of Virginia, because kaléo resides there, 28 U.S.C. § 1391(a)(1), and for Title VII purposes Ms. Molina's employment records are found there, 42 U.S.C. § 2000e-5(f), *see* Declaration of Elvira Cashel, ECF No. 26, ¶ 1. Venue is proper in both of these federal courts. Section 1404(a) – and *Atlantic Marine* – governs transfer.

11

In *Atlantic Marine*, the Supreme Court held that where the parties' contract contains a valid forum selection clause,   then the case should be transferred unless "public-interest considerations" dictate otherwise.[5] *Id.* at 579. However, as the Supreme Court said, public-interest considerations "will rarely defeat a transfer motion," and therefore "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. This is not an unusual case. None of Ms. Molina's allegations rise to the level of uniqueness that would require the Court to "refuse to transfer [the] case notwithstanding the counterweight of a forum-selection clause." *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988)).

Here, the forum-selection clause in Ms. Molina's Employment Agreement and Loyalty Agreement is valid and enforceable. The Loyalty Agreement contains an integration clause, disclaiming any reliance on parol representations made prior to execution of the agreement. Further, as set forth above, the economic "pressure" of obtaining employment is not sufficient to rise to the level of duress that will void an otherwise enforceable provision. The forum-selection clause was clearly visible, in ALL-CAPITALS. The Loyalty Agreement contains an affirmative representation from Ms. Molina that she has reviewed it, understands it, and has the right to seek independent advice. (Loyalty Agreement, p. 7, ¶ 15.) And, in any event, the law imposes upon Ms. Molina the obligation to read and understand the agreement before signing it—and, once signed, she is charged with knowing and understanding its provisions. *See Zhu v. Hakkasan NYC LLC*, 2017 Fair Empl. Prac. Case. (BNA) 424,088 (S.D.N.Y. Nov. 28, 2017) ("Failure to read or understand a contract does not relieve a signer of its obligations thereunder.").

---

[5]  While it is true that, generally, a District Court's analysis under § 1404(a) tracks the analysis under the doctrine of *forum non conveniens*, that analysis only applies in the absence of a forum-selection clause. Where there is a valid forum-selection clause, the convenience of the parties is irrelevant to the analysis because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 134 S. Ct. at 582.

5021639

Moreover, after she signed the agreements, Ms. Molina worked for kaléo for over two years, accepting all of the benefits of employment, without raising any issue with respect to either the Employment Agreement or Loyalty Agreement. She is therefore deemed to have ratified their provisions, regardless of any claims she may have had as to coercion or duress at the time of their execution. *See Sudul v. Computer Outsourcing Servs.*, 917 F. Supp. 1033, 1047 (S.D.N.Y. 1996) (a plaintiff who fails to raise a duress claim "promptly" has "waived this claim by [her] acquiescence"). Since Ms. Molina failed to raise any claims of coercion or duress promptly, she is deemed to have ratified the agreements and the forum-selection clause is therefore valid and enforceable.

Nor can Ms. Molina avoid transfer on the ground of public interest considerations. As the Supreme Court held in *Atlantic Marine*, where a valid forum-selection clause is present, the case must be transferred to the contractually-agreed forum unless "public-interest considerations" outweigh transfer. However, as the Court noted, refusing transfer on this ground is reserved for only the rarest of cases and the most extraordinary circumstances. Ms. Molina bears the burden of "showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 134 S. Ct. at 582. She cannot meet this burden.

Public-interest considerations when analyzing a motion to transfer under a valid forum-selection clause include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  First, this case arises primarily out of a federal question, namely Title VII, so the third factor, having the trial of a diversity case in a forum that is at home with the law, is inapposite. Second, this controversy is hardly so "localized" to the

13

State of New York that the local interest in having it decided in New York would outweigh the otherwise valid and enforceable forum-selection clause. As set forth above, the allegations are so tenuously connected to New York that it is questionable whether a court in New York could even exercise jurisdiction over this controversy, much less the ability to overrule a valid forum-selection clause. Finally, if anything, the interest in relieving court congestion would counsel *in favor* of transfer, since cases are, on average, brought to trial in the Eastern District of Virginia in less than half the time that they are in the Southern District of New York.[6] *See* Bredehoft Dec., ECF No. 25, Att. C.

In short, the forum-selection clause in Ms. Molina's Loyalty Agreement is valid and enforceable. No public-interest considerations dictate overruling the parties contractually-agreed forum for disputes. The Court should enforce the clause and transfer this case to the United States District Court for the Eastern District of Virginia in Richmond.

## ARGUMENT

### III.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The Court should dismiss the Amended Complaint pursuant to Rule 12(b)(3) for lack of personal jurisdiction over kaléo.

#### A.   This Court Lacks General Personal Jurisdiction Over kaléo

This Court lacks general personal jurisdiction over kaléo because kaléo is not "at home" in the State of New York. A corporation is subject to the exercise of general personal jurisdiction only where it can be "fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). This is the equivalent of an "individual's domicile." *Id.* The

---

[6]  The Eastern District of Virginia is colloquially referred to as the "rocket docket" because of the speed with which cases are litigated there.

5021639

mere fact that a corporation conducts "substantial, continuous, and systematic" business in a State is not enough to confer general personal jurisdiction over the corporation in that State. *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014).  Ms. Molina's filing of this case in this Court overlooks the sea change in personal jurisdiction law effected in the last decade by these two cases.

In *Daimler*, the Supreme Court reversed the Ninth Circuit and held that Daimler, who was neither incorporated nor had its principal place of business in California, was not at home in California and could not be subject to general personal jurisdiction there. *Id.* at 139. The Court held that subjecting a corporation to general personal jurisdiction in every State where it conducts substantial, continuous, and systematic business "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz* , 471 U.S. 462, 472 (1985)).

Kaléo is incorporated in Virginia. Its principal place of business is in Virginia.  Its corporate officers are in Virginia. Its corporate records are in Virginia. It does not have corporate officers or records in New York. It is "at home" in Virginia. It is not "at home" in New York. Accordingly, this Court does not have general personal jurisdiction over kaléo.

B.   **This Court Does Not Have Specific Jurisdiction Over kaléo**

Since it is not "at home" in New York, this Court can only exercise jurisdiction over kaléo to the extent the claims asserted by Ms. Molina "arise out of or relate to [kaléo's] contacts with [New York]." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Ms. Molina's claims do not arise out of kaléo's contacts with New York and should therefore be dismissed.

5021639

First, none of Ms. Molina's specific allegations of discrimination took place in New York. The Supreme Court has instructed that a court may exercise specific jurisdiction over a nonresident defendant only if there is "an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence *that takes place in the forum State*.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S. at 919)) (emphasis added).

Even though Ms. Molina is a New York resident who may have allegedly "suffered foreseeable harm in [New York]" as a result of the alleged discrimination, none of the specific acts of which she complains are alleged to have actually taken place in New York, a necessary prerequisite to this Court's exercise of specific jurisdiction over kaléo.  *Bristol-Myers*, 137 S. Ct. at 1781–82 (mere fact that alleged conduct "affected plaintiffs with connections to the forum State did not suffice to authorize jurisdiction"). In this case, Ms. Molina alleges that she was unlawfully denied *glatt* kosher meals in Dallas and was the subject of discriminatory harassment in South Carolina (Amended Complaint ¶¶ 42, 95). Although she does allege certain acts of discrimination by her supervisor, Ms. Nicoletta, she does not specifically allege that these acts took place in New York.  Given that Ms. Nicoletta was kaléo's "Area Sales Manager" for the entire "Northeast" region (Amended Complaint ¶ 18) and resided in another state, the Court cannot fairly infer from the alleged facts that the acts attributed to her actually took place in New York, giving rise to specific jurisdiction over this controversy.

To the extent Ms. Molina alleges that she made fruitless complaints to kaléo's HR department about alleged discrimination, those complaints were received, handled, and acted upon by kaléo's HR staff in Richmond, a fact which Ms. Molina all but concedes in her Amended Complaint. *See* Amended Complaint ¶ 8(b) (alleging that kaléo's principal offices are

16

located in Virginia) and Attachments C and D.  Therefore, all of the specific acts that give rise to Ms. Molina's claims occurred *outside* the State of New York. The fact that she alleges to have experienced the effects of those alleged acts in New York is not enough to confer specific jurisdiction over kaléo in New York.  *See Bristol-Myers*, 137 S. Ct. at 1781–82.

Ms. Molina's allegations against kaléo are simply "too tenuous to support the exercise of specific jurisdiction" in her chosen forum of New York. *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018).  Therefore, the Court lacks specific personal jurisdiction over kaléo and Ms. Molina's claims should be dismissed pursuant to Rule 12(b)(3).

## IV.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER THE NEW YORK CITY HUMAN RIGHTS LAWS

If the Court finds that it has jurisdiction over kaléo and declines to stay the case pending arbitration or transfer the case under the forum-selection clause, then the Court should nevertheless dismiss Ms. Molina's claims under New York State law for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Ms. Molina's Amended Complaint fails to state a claim for relief under the New York City Human Rights Laws (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*, because none of the alleged acts of discrimination are specifically alleged to have taken place in New York City; the location of those acts which we know from the Amended Complaint are outside of New York.  As such, to the extent the Court denies the other relief sought by kaléo with respect to arbitration and personal jurisdiction, these claims should be dismissed with prejudice.

The NYCHRL is a local ordinance of the City of New York. Its jurisdiction does not extend to any acts which take place outside the City of New York. *See* N.Y. Admin. Code § 2-201 (limiting the jurisdiction of the New York City Administrative Code to "The City of New York," defined as "all that territory contained within the boroughs of Manhattan, The Bronx,

5021639

Brooklyn, Queens and Staten Island"); *see also Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565, 571 (S.D.N.Y. 2003) ("[B]oth New York State law and the New York City Administrative Code limit the applicability of the City Human Rights Law to acts occurring within the boundaries of New York City.") (quoting *Duffy v. Drake Beam Morin*, 1998 U.S. Dist. LEXIS 7215, at *11 (S.D.N.Y. May 19, 1998)).

In *Santos*, the plaintiff employee alleged discrimination against his employer and sought relief under the NYCHRL. However, none of the supervisors who committed the alleged discriminatory acts worked in New York City. *Santos*, 271 F. Supp. 2d at 571. None of the adverse employment decisions against the plaintiff are alleged to have been made in New York City. *Id.* On those facts, the Court concluded that the plaintiff had failed to establish a violation of the NYCHRL. *Id.*

Here, as in *Santos*, there are no allegations in the Amended Complaint that kaléo discriminated against Ms. Molina in New York City. Putting aside the incidents in Dallas and South Carolina, which on their face do not implicate New York City law, there are no allegations in the Amended Complaint that any of Ms. Molina's supervisors worked in New York City or that any of the decisions with respect to her complaints to HR were made in New York City. On the contrary, given the undisputed fact that kaléo's corporate office and principal place of business is in Richmond, these decisions would have been made, and indeed were made, in Richmond, Virginia.

Since Ms. Molina has utterly failed to allege *any* acts which took place in New York City, she has failed to state a claim for relief under the NYCHRL and accordingly her claims thereunder should be dismissed with prejudice.

5021639

## **CONCLUSION**

Kaléo's motion to dismiss for lack of personal jurisdiction should be granted. Alternatively, this case should be stayed pending arbitration in Virginia or transferred to the United States District Court for the Eastern District of Virginia, Richmond Division. If the Court declines to dismiss or transfer the case, then the claims under New York City law should be dismissed with prejudice for failure to state a claim.

Dated: July 11, 2018
      New York, New York

                             Respectfully submitted,
                             KAUFMAN & CANOLES, P.C.

                             /s/ John M. Bredehoft_____
                             John M. Bredehoft, Esq.
                             *Attorneys for Defendant*
                             150 W. Main Street, Suite 2100
                             Norfolk, VA 23510-1665
                             Telephone: (757) 624.3225
                             Facsimile: (888) 360.9092
                             jmbredehoft@kaufcan.com

                             Joan M. Gilbride
                             jgilbride@kbrlaw.com

To:    Counsel of Record

19

5021639