USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/25/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH MOLINA,

                Plaintiff,

v.

KALEO, INC.,

                Defendant.

---

No. 17-CV-7631 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Elizabeth Molina, a Modern Orthodox Jew of Sephardic heritage, brings this action against Defendant kaléo, alleging it discriminated against her on the basis of her religion. Plaintiff claims Defendant subjected her to a hostile work environment, failed to provide her with a reasonable accommodation for her observance of the Sabbath and Jewish dietary restrictions, and retaliated against her for her complaints and requests, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 and the New York City of Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. Before the Court is Defendant's motion to compel arbitration in Virginia and stay this action, to transfer the case to the United States District Court for the Eastern District of Virginia, or to dismiss for lack of personal jurisdiction or failure to state a claim. For the reasons set forth below, Defendant's motion to compel arbitration and stay this action is granted.

## BACKGROUND[1]

Plaintiff signed an Employment Agreement and a Loyalty Agreement (together, the "Agreements") with Defendant on November 19, 2015.[2] The Employment Agreement provides, *inter alia*:

---

[1] The following facts are drawn from the First Amended Complaint, accompanying exhibits, and Plaintiff's Declaration, and are stated in the light most favorable to Plaintiff, the non-moving party.

[2] Plaintiff's Amended Complaint and opposition papers state that she was hired in late October 2015, and her

> **THE PARTIES AGREE THAT ANY CONTROVERSY, CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE LOYALTY AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF OR RELATING TO THE EMPLOYMENT OF THE EMPLOYEE, OR THE TERMINATION THEREOF, INCLUDING ANY STATUTORY OR COMMON LAW CLAIMS UNDER FEDERAL, STATE, OR LOCAL LAW, INCLUDING ALL LAWS PROHIBITING DISCRIMINATION IN THE WORKPLACE, SHALL BE RESOLVED BY ARBITRATION BEFORE A SINGLE ARBITRATOR IN THE COMMONWEALTH OF VIRINGIA [sic] IN ACCORDANCE WITH THE EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES OF THE AMERICAN ARBITRATION ASSOCIATION.**

First Amended Complaint, Ex. A ¶ 12 ("FAC") (emphasis in original). The Loyalty Agreement includes the following provision:

> SUBJECT TO THE REQUIREMENT TO ARBITRATE AS SET FORTH IN AY EMPLOYMENT AGREEMENT BETWEEN THE COMPANY AND ME, THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY CONSENT TO THE EXCLUSIVE JURISDICTION OF THE FOLLOWING COURTS IN MATTERS RELATED TO THIS AGREEMENT OR MY EMPLOYMENT WITH THE COMPANY AND AGREE NOT TO COMMENCE ANY SUIT, ACTION OR PROCEEDING RELATING THERETO EXCEPT IN ANY OF SUCH COURTS: THE STATE COURTS OF THE COMMONWEALTH OF VIRGINIA OR THE COURTS OF THE UNITED STATES OF AMERICA LOCATED IN THE CITY OF RICHMOND, VIRGINIA.

FAC, Ex. B. ¶ 14(a)(i) (emphasis in original). In short, the Employment Agreement mandates arbitration for all disputes arising from Plaintiff's employment with Defendant, and the Loyalty Agreement, subject to this requirement, provides for exclusive jurisdiction in Virginia for any judicial proceedings between the parties. After signing the Agreements, Plaintiff began a successful period of employment for the remainder of 2015 and 2016, during which Defendant's management team praised her performance. FAC ¶¶ 20–21. That ended in October 2016, however, when Defendant hired Angela Nicoletta as Plaintiff's direct supervisor, who allegedly began to discriminate against her due to her adherence to Orthodox Judaism. According to Plaintiff, Nicoletta "discredited,

---

declaration asserts that she began work in November 30, 2015, but the Agreements themselves list November 19, 2015 as the signing date.

2

undermined, and humiliated" her in front of clients, made disparaging comments about her religious attire, refused to accommodate her observance of the Sabbath, and held her to stricter standards than those to which she held non-Jewish employees. *E.g. id.* ¶¶ 22–23, 25, 27, 31, 80. When Plaintiff raised these issues with Defendant's human resources department, the department allegedly refused to take any action. Defendant also allegedly failed to provide Kosher food for Plaintiff at company conferences. *Id.* ¶¶ 36, 46, 53. In response, Plaintiff filed a charge with the New York District Office of the EEOC, which issued her a right-to-sue letter in March 2018. *Id.* ¶¶ 4–5. Plaintiff now seeks a declaratory judgment that Defendant may not block her from pursuing her claims in New York. *Id.* ¶ 7.

After Plaintiff filed her First Amended Complaint, Defendant moved to compel arbitration in light of the Employment Agreement's mandatory arbitration provision and stay the action, or, in the alternative, transfer the case to the United States District Court for the Eastern District of Virginia, dismiss the action entirely for lack of personal jurisdiction, and/or dismiss the New York State law claims for failure to state a claim pursuant to Rule 12(b)(6).

## LEGAL STANDARD

Under the Federal Arbitration Act, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In considering a motion to compel arbitration, a court must consider four factors:

3

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and, fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998). "In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Rial*, 316 F.3d 171, 175 (2d Cir. 2003)). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citations omitted).

## DISCUSSION

Plaintiff opposes the enforcement of the arbitration clause "solely on the grounds that it is unconscionable." Opp. at 6. This argument falls within the first factor a court must consider on a motion to compel: whether the parties agreed to arbitrate. An agreement to arbitrate that was unconscionable or was the product of economic duress is invalid. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002). Under New York law, on which both parties rely for their arguments on unconscionability, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."[3] *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1,

---

[3] Were the Court to construe the Agreements themselves, it would construe them in accordance with the substantive law of the Commonwealth of Virginia, as the Agreements provide. *See Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 534 (E.D.N.Y.) (subsequent history omitted). The present dispute, however, relates to enforceability of the arbitration clause itself, and the parties' briefs assume that this Court will rely on New York law to resolve this issue. If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course,

4

10, 534 N.E.2d 824 (1988) (internal quotation marks omitted). Unconscionability typically includes both procedural and substantive components. *See id.* The procedural component asks whether a party lacked "a meaningful choice" in deciding whether to sign the contract. *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (2d Dep't 1983); *see Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999). "Mere inequality in bargaining power" is not a sufficient basis for finding an arbitration clause unenforceable in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). As the Second Circuit has noted, the FAA "certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone v. Atl. Video at the Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citing *Gilmer*, 500 U.S. at 33). But unequal bargaining power "coupled with high pressure tactics that coerce an employee's acceptance of onerous terms" may be sufficient to demonstrate procedural unconscionability. *Brennan*, 198 F. Supp. 2d at 382; *see also Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("high pressure tactics" and "deceptive language" can lead to invalidation of adhesive contract). Substantive unconscionability exists when the terms are "grossly unreasonable" by favoring the party seeking to enforce the contract. *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F.Supp.2d 564, 569 (S.D.N.Y. 2013) (citations omitted).

Plaintiff's principal argument about procedural unconscionability boils down to a claim that she was not told about the existence of an arbitration provision in the Agreements but was advised that although she could "technically" take the Agreements home to review, doing so would "postpone [her] training and [her] start date." Pl. Decl. ¶ 18. As an initial matter, "it is settled New York law that

---

sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)). The Court therefore relies on New York law to assess the enforceability of the Agreements.

'a party will not be excused from his failure to read and understand the contents' of a document." *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) (quoting *Johnson v. Thruway Speedways, Inc.*, 63 A.D.2d 204, 407 N.Y.S.2d 81, 83 (3d Dep't 1978)). Moreover, this is not a situation where a would-be signatory to a contract was denied the opportunity to read and understand the contract before signing it. There is no indication, for instance, that Plaintiff was limited in the time she had to review the contract that day. *Cf. Brennan*, 198 F. Supp. 2d at 383 (employer "gave the employees no more than fifteen minutes to review a sixteen-page single-spaced document"). And although she alleges her start date would have been pushed back if she took the Agreements home, Plaintiff was not threatened with lasting professional consequences, such as a promotion denial or a rescission of the job offer, if she did not sign at that time. *Cf. id.* (procedural unconscionability found where employer "threatened the employees that those would did not sign the document would not be promoted" and employee "reasonably felt that she had no choice but to sign the EDRP or she would lose her job").

Plaintiff next claims that then-Area Sales Manager Maurice Mulcahy, who met with her to go over the Agreements, affirmatively misrepresented the nature of these Agreements. In particular, Molina alleges that Mulcahy "explained that the purpose of the Agreements was to ensure that [she] could not give away company secrets," but that he "did not tell [her] that the Agreements contain arbitration or forum selection clauses or explain what those clauses meant." Pl. Decl. ¶¶ 15–16. Mulcahy allegedly added that although the company was based in Virginia, Plaintiff "would have no problems working from New York and that all laws concerning the Agreements would apply to [her] at [her] current residence in New York." *Id.* ¶ 17. With respect to the statements about the Agreements' "purpose," mention of a document's overall purpose implies nothing about how parties to the document will resolve disputes. *See Victorio*, 2015 WL 2152703, at *14 (no fraudulent

inducement to contract where employer told plaintiffs they were signing "work documents or documents as part of their employment application," without mentioning an arbitration provision). In other words, stating that a document deals with confidentiality does not suggest anything about an arbitration clause, or any other method of dispute resolution. Similarly, Mulcahy's statement about the law applicable to Plaintiff's current residence in New York does not bear on the existence of an arbitration provision or forum selection clause, as these provisions did not affect Plaintiff's ability to work from New York or her "status as a resident of New York." Opp. at 7.

Plaintiff's argument that Defendant "buried the arbitration and forum selection clauses deep within 22 pages of terms and conditions" is likewise unavailing. Opp. at 7. The arbitration clauses, appearing on the sixth pages of both the Employment and Loyalty Agreements, *see* FAC, Ex. A ¶ 12 & Ex. B. ¶ 14(a)(i), are the *only* provisions in all capital letters in either document, and in the Employment Agreement they are in bold-face as well, as reproduced above. In other words, they "could hardly have been any less hidden." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 328 (D. Conn. 2011); *see Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 536 (E.D.N.Y.) (granting motion to compel arbitration where, "[i]n order to get to the signature page, plaintiff had to scroll through the entire contract, including the arbitration clause") (subsequent history omitted). If anything, the agreements reflect an effort by Defendant *not* to bury the arbitration provision. For the foregoing reasons, the arbitration clause is not procedurally unconscionable.

Even assuming, *arguendo*, that Plaintiff could demonstrate procedural unconscionability, there is nothing substantively unconscionable about the arbitration provisions. The principal argument Plaintiff raises here is that arbitration in Virginia would be "cost prohibitive" for her. Opp. at 9. Although the Court is sympathetic to Plaintiff's personal circumstances, this concern does not make arbitration unconscionable here. Plaintiff does not allege, for instance, that "filing and

administrative fees attached to arbitration" are "so high as to make access to the forum impracticable." *American Express Co. v. Italian Colors Restaurant, et al.*, 133 S. Ct. 2304, 2310–11 (2013); *see also E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) (a "6,000 to $11,250" initial fee for pressing claims in arbitration could be "prohibitively expensive" "regardless of . . . financial situation"). It is also not clear that the existence of such fees, were they even to apply, would justify invalidating an arbitration clause upon which the parties mutually agreed. *See Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998) ("$28,000 and $32,000" in arbitration fees not unconscionable because the non-moving party was "free to investigate before entering into the agreement"). Even assuming "it is sufficient for an employee seeking to avoid arbitration to show a likelihood that he or she will be responsible for significant arbitrators' fees, or other costs which would not be incurred in a judicial forum," *see Ball v. SFX Broad., Inc.*, 165 F. Supp. 2d 230, 240 (N.D.N.Y. 2001), Plaintiff presents no evidence that this is the case here. The only costs she alleges involve the expense of travel to Virginia, where the arbitration will be located. As Defendant points out, however, if cost of travel is prohibitive, Plaintiff can request that the arbitrator order depositions to be held in New York or utilize expedited procedures, authorized by the American Association of Arbitration, including submission without an oral hearing. Reply at 7. As the Second Circuit stated in *Harrington v. Atl. Sounding Co.*, "[Plaintiff]'s contention that the Agreement is substantively unconscionable because the financial cost of arbitration essentially 'extinguish[ed][his] ability to pursue' his claims, fails because the Rules of Employment for the American Association of Arbitration ('AAA') expressly provide that '[t]he AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees,' and [Plaintiff] has not explained why the fees would not be deferred or reduced in his case." 602 F.3d 113, 126 (2d Cir. 2010) (citations omitted); *see also Doctor's Assocs., Inc.*, 150 F.3d at 163 (rejecting

a franchisee's argument that the arbitration clause was unconscionable as it would require him to travel from New Jersey to Connecticut to pursue his claims). The same is true here.

Plaintiff's argument that "the arbitration clause is unenforceable because it allows Defendant—but not Plaintiff—to file for injunctive and declaratory relief in a court of law" is also unconvincing. Opp. at 7. The provision in the arbitration clause allowing Defendant to seek injunctive relief upon violation of the *Loyalty Agreement* does not reflect a broader lack of mutuality in Employment Agreement. *See Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018) ("Particularly given the otherwise mutual application of the claims subject to arbitration to both [Defendant] and its users, I do not find that the separate carve-out for these intellectual property claims to be substantively unconscionable.").

Lastly, to the extent Plaintiff's Opposition makes an economic duress argument, this argument fails. Under New York law, the defense of economic duress or coercion is "reserved for extreme and extraordinary cases, where the party asserting economic duress can show (1) threats of an unlawful act by one party that (2) compel performance by the other party of an act that it had a legal right to abstain from performing." *Adler v. Lehman Bros. Holdings Inc.*, 855 F.3d 459, 477 (2d Cir. 2017) (alterations omitted) (internal quotation marks omitted). "However, 'the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so.'" *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (quoting *Di Rose v. PK Mgmt. Corp.*, 691 F.2d 628, 633-34 (2d Cir. 1982)). Here, Plaintiff signed the Agreements in late November 2015—which were sent to her a few weeks later, *see* Pl. Decl. ¶ 23—but continued working at the company until she went on disability leave on October 26, 2017. Plaintiff does not claim that she repudiated the Agreements at any point during this period, and she has offered no explanation for remaining silent for two years. *See VKK Corp. v. Nat'l Football League*, 244 F.3d

114, 122 (2d Cir. 2001) (noting that "[d]elays as short as six months have been held to constitute forfeiture of the claim" of economic duress). The doctrine of economic duress cannot release her from the binding effect of the Agreements under these circumstances.

The Court need not address the remainder of Defendant's arguments in support of their motion, as the arbitration provision is valid and the parties shall proceed under its terms.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is granted, and this action is stayed. The parties shall notify the Court within one week of completion of the arbitration.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 32.

SO ORDERED.

Dated:    January 25, 2019
           New York, New York

_____
Ronnie Abrams
United States District Judge